**20-1319**

# United States Court of Appeals
# for the Federal Circuit

SIGNATURE SYSTEMS, LLC,
*Appellant*

v.

AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.,
*Appellees*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual
Property and Director of the United States Patent and Trademark Office,
*Intervenor*

_____

Appeal from the United States Patent and Trademark Office, Patent
Trial and Appeal Board in No. CBM2018-00035

## APPELLEES' MOTION FOR AN AWARD OF
## ATTORNEYS' FEES AND EXPENSES

John D. Vandenberg
Sarah E. Jelsema
Todd M. Siegel
Robert T. Cruzen
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com

*Counsel for Appellees American Express
Company and American Express Travel
Related Services Company, Inc.*

December 5, 2022

# <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellees, American Express Company and American Express Travel Related Services Company, Inc., certify the following:

1.      The full name of every party or amicus represented by me is:

American Express Company and American Express Travel Related Services Company, Inc.

2.      The Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

American Express Company and American Express Travel Related Services Company, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Berkshire Hathaway, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Klarquist Sparkman, LLP: John D. Vandenberg, Todd M. Siegel, Robert T. Cruzen

5.      The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affect or be affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

*Signature Systems, LLC v. American Express Company and American Express Travel Related Services Company, Inc.*, Case No. 1:15-cv-20063 (S.D. Fla.)

6.      Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None/Not applicable.

# <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES ................................................................iii

I.     STATEMENT OF OPPOSITION ................................................1

II.    MOTION ...............................................................................1

III.   INTRODUCTION ...................................................................1

IV.    FED. R. APP. P. 38................................................................2

V.     THE APPEAL WAS FRIVOLOUS AS ARGUED .......................3

       A.     Frivolous As Argued On *Alice* Issues ...................................3

       B.     Frivolous As Argued On Expert Issues................................6

       C.     Frivolous As Argued On Other Issues ..................................7

VI.    THE APPEAL WAS FRIVOLOUS AS FILED ............................9

VII.   THE COURT SHOULD AWARD AMERICAN EXPRESS $75,000.........10

VIII.  CONCLUSION.......................................................................12

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS...13

# TABLE OF AUTHORITIES

Page

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................ passim

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021) .................................................. 4, 5, 9

*Finch v. Hughes Aircraft Co.*,
  926 F.2d 1574 (Fed. Cir. 1991) ...................................................3, 4

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017) ...................................................9

*Pop Top Corp. v. Rakuten Kobo Inc.*,
  2022 WL 2751662 (Fed. Cir. July 14, 2022) ................................10

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  948 F.2d 1573 (Fed. Cir. 1991) ...................................................2

*Walker v. Health Int'l Corp.*,
  845 F.3d 1148 (Fed. Cir. 2017) ...................................................5

**Statutes**

35 U.S.C. § 285 ...........................................................................9

**Rules**

Fed. Cir. R. 27 ............................................................................1

Fed. Cir. R. 47.7 .........................................................................1

Fed. Cir. R. Rule 36 ...................................................................9

Fed. R. App. P. 15 ......................................................................8

Fed. R. App. P. 38 ............................................................... passim

**Regulations**

37 C.F.R. § 42.64 .......................................................................6

## I.    STATEMENT OF OPPOSITION

Pursuant to Fed. Cir. R. 27(a)(2), counsel for Appellees discussed this motion with counsel for Appellant. Appellant's counsel objects to this motion.

## II.    MOTION

Pursuant to Fed. R. App. P. 38 and Fed. Cir. R. 47.7, American Express Company and American Express Travel Related Services Company, Inc. ("American Express") hereby move for an order finding that the appeal of Signature Systems, LLC ("Signature") was frivolous as argued and as filed, and ordering Signature to pay American Express $75,000 in damages. This motion is filed within thirty (30) days of this Court's judgment and is thus timely under Fed. Cir. R. 47.7.

## III.    INTRODUCTION

Bare minimum expectations of any patent owner appealing an unpatentability decision of the Board include the following:

- identify and address each alternative ground for the Board's decision and do not misstate those grounds;

- address the relevant portions of the patent's claims and specification;

- address the closest precedents and, when a new precedent issues during the appeal that forecloses any genuine appealable issue, drop the appeal; and

- limit the briefs to the issues that are both appealable and appealed, and not forfeited at the Board.

1

Signature here violated all these basic norms, and more. Below we identify ten examples of Signature's misconduct.

## IV.    FED. R. APP. P. 38

When the Court determines that an appeal was frivolous, it may award just damages and single or double costs to the appellee. *See* Fed. R. App. P. 38. In 1982, this Court "established the policy of enforcing this rule vigorously." Practice Note to Fed. R. App. P. 38 in Fed. Cir. Rules.

An appeal is frivolous as filed when no genuinely appealable issues existed, and frivolous as argued when the appellant engages in misconduct in arguing the appeal. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578 (Fed. Cir. 1991). Such misconduct can include manufacturing arguments "by distorting the record, by disregarding or mischaracterizing the clear authority against its position, and by attempting to draw illogical deductions from the facts and the law." *Id.* at 1579. Bad faith need not be shown: "The standard for Rule 38 is objective, not subjective, and 'has nothing to do with the mental state of the person sanctioned.'" *Id.* at 1581 (citation omitted).

"Just damages" awarded under Rule 38 may include attorneys' fees or be a fixed amount set by the Court. *Id.*

## V.    THE APPEAL WAS FRIVOLOUS AS ARGUED

### A.    Frivolous As Argued On *Alice* Issues

1. The heart of *Alice*[1] step one is the abstract idea, if any, to which the claims are directed. Here, the Board identified the abstract idea of the claims as: "currency exchange through transferring and exchanging reward points data," repeating this articulation verbatim nine times. (Appx39, Appx40, Appx43, Appx46 (twice), Appx47, Appx62, Appx71, Appx85–86.) Any patent owner genuinely challenging the Board's *Alice* step one analysis would acknowledge the abstract idea the Board identified and attempt to show either that it is not the focus of the claims or that it is not abstract, or both. Not Signature. Signature's Blue Brief not once quotes or acknowledges the abstract idea identified by the Board. Worse still, it misstates what the Board identified as the abstract idea, pretending that the Board identified the claims' abstract idea as "data processing" (Blue Br. at 19), which the Board plainly did not do. *Cf. Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1582 (Fed. Cir. 1991) (finding appeal frivolous as argued in part because the appellant "seriously misrepresented the record below").

2. When an agency bases its decision on two alternative grounds, an appellant with a genuine appeal seeks to show error in each ground. But not Signature. Here,

---

[1] *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

the Board ruled that the claims' reward points were a type of currency and, in the alternative, ruled that the claims were directed to an abstract idea *even if reward points are not currency*. (Appx42.) Yet, Signature's Blue Brief objects that the Board was wrong to refer to reward points as "currency," without acknowledging the Board's alternative basis for its decision. Even when American Express noted the Board's alternative holding (Red. Br. at 28–29), Signature in its Gray Brief and at the Oral Argument continued to ignore this alternative holding.

3. *Alice* largely is a *stare decisis* doctrine. Courts and litigants look to the closest patent claims ruled patent eligible or ineligible in governing precedents. Here, the closest precedent is extremely close: *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367 (Fed. Cir. 2021). The patent there not only claimed commercial transactions using reward points, as here, but also its alleged improvement was replacing a human intermediary with generic Web components, again as here. Faced with this precedent issuing during its appeal, Signature should have dropped its appeal. Having chosen to proceed anyway, it needed to attempt to distinguish this close precedent. But that is not what Signature did. Signature's Blue Brief does not even mention this extremely close precedent. Failure to cite close adverse precedent is an example of frivolous argument. *Cf. Finch*, 926 F.2d at 1579–80 (finding appeal frivolous as argued in part for failure to address contrary precedents).

4. Appellants are expected to not make facially absurd arguments. Signature also failed this bare minimum expectation. The Gray Brief argues that the claims are patent eligible in part because they do not preempt *the entire rewards field*, as shown by the existence of other patents in this field. (Gray Br. at 10.) But patents do not claim or preempt entire fields. It is a truth needing no proof that none of the thousands of claims declared patent ineligible under *Alice*—including those in *cxLoyalty*—have preempted an entire field. The relevant, albeit non-dispositive, preemption issue is whether the claims preempt *their abstract idea* in a particular field (which these claims do), not *all abstract ideas* (and inventions) in the field. Signature's suggestion that the Court should reverse the Board in part because this field has more than one patent satisfies any definition of frivolity. *Cf. Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1156 (Fed. Cir. 2017) (under Rule 38, awarding fees and double costs on appeal, amounting to $51,801.88, in part in view of the appellant's "bent to mischaracterize clear authority and to draw illogical conclusions from the law and facts").

The above examples show that Signature repeatedly failed the bare minimum expectations of any appellant in this Court, and therefore are enough for the Court to declare this appeal frivolous as argued. But there are more examples.

5

**B.    Frivolous As Argued On Expert Issues**

5. The Board has clear rules on how and when to object to the declaration of an expert witness, setting specific deadlines for both objecting to such evidence and moving to exclude it. 37 C.F.R. §§ 42.64(b) & (c). Before the Board, Signature did not object to Dr. Chaterjee's expert testimony or move to exclude it. An appellant with a genuine appeal would either not raise on appeal an evidentiary objection it had forfeited or at the very least attempt to show why the Court should excuse that forfeiture. Yet, the Blue Brief—without acknowledging its forfeiture—objects to the admission of this expert testimony. In response to American Express citing these rules of the Board and noting Signature's waiver (Red Br. at 36–37), Signature denied waiver without acknowledging its failure to comply with the Board's rules and without citing any legal precedent excusing Signature's failure to comply with those rules. (Gray Br. at 2–3.)

6. Any genuine appellant accusing the Board of error naturally cites to specific passages in the Board's decision supposedly constituting such error. Not Signature. The Blue Brief objects that the Board relied upon Dr. Chaterjee's testimony in its *Alice* determination—without citing a single instance of the Board citing to that testimony. In reality, the Board cited to Dr. Chaterjee's testimony defining the POSITA and explaining the prior art. (Appx32, Appx43–46, Appx68.) Those are classic topics for a technical expert in a patent dispute.

7. The Gray Brief argues that an expert in the art should not testify as to what is "well known" in the art. (Gray Br. at 3.) Enough said.

In sum, Signature disregarded the rules governing the CBM, the true bases for the Board's decision, and the universally accepted role of technical experts in patent cases. These seven examples should be enough for the Court to declare this appeal frivolous as argued but there are even more examples.

### C.    <u>Frivolous As Argued On Other Issues</u>

8. Again, Appellants are expected to not make facially absurd arguments. But Signature's Blue and Gray Briefs both argue that the Board is collaterally estopped by Patent Office Examiners having approved the claims over an *Alice* challenge in an *ex parte* Reexamination which Signature had initiated. Signature cites no precedent finding *any* tribunal (as distinct from a party) being collaterally estopped, and cites nothing in the statute carving out from CBM (or IPR or PGR) review patents that have undergone *ex parte* reexamination. On the contrary, the main point of the AIA's post-grant review proceedings is to correct mistakes by Patent Office Examiners in *ex parte* proceedings, through an *inter partes* proceeding before a panel of administrative law judges. Congress did not allow patent owners to evade *inter partes* review by administrative law judges by requesting an *ex parte* reexamination with Examiners.

9. The federal rules governing appeals of agency decisions require that the petition or notice of appeal specify the order or parts thereof to be reviewed. Fed. R. App. P. 15(a)(2)(C). Therefore, a party cannot complain on appeal about an agency action taken years after the party's notice of appeal. Yet, the Blue Brief challenges the Director's December *2021*, Denial of Review of the Board's decision, despite Signature having expressly declined the Court's invitation to update its *2019* Notice of Appeal to appeal that denial. In response to the Red Brief noting this waiver (Red Br. at 38–39), the Gray Brief denies waiver without acknowledging Signature's failure to amend the notice of appeal or even attempting to explain why that failure did not forfeit its chance to challenge the denial. (Gray Br. at 1–2.)

10. Perhaps the most obvious of the bare minimum expectations is not to appeal non-appealable decisions. But Signature's Blue and Gray Briefs challenge the Board's threshold CBM institution Decision despite this Court ruling two years ago that such a decision is non-appealable under the statute. When the Red Brief noted this (Red Br. at 34–35), the Gray Brief doubled down with a baseless assertion that this ruling of the Court did not apply here. (Gray Br. at 4–5.) Signature finally conceded the point at the Oral Hearing but that cannot excuse its frivolous position in the Blue and Gray Briefs.

Taken collectively, these 10 instances of misconduct satisfy any measure of an appeal being frivolous as argued.

## VI.    <u>THE APPEAL WAS FRIVOLOUS AS FILED</u>

The briefing and arguments on the merits show that the appeal also was frivolous as filed. Signature admitted to the Board and this Court that the claimed subject matter does not improve the way a computer system works. (Appx3467; Blue Br. at 28 ("[T]he computer technology is not new.").) The patent specification emphasized that "any type" of computers and computer network would suffice. (Appx116, col. 5, lns. 13–22 & 58–64.) Both clear statements in the specification describing the alleged advance (Appx115, col. 3, lns. 30–42 & 64–66), and Signature's own descriptions of the alleged invention to the Board (*see* Blue Br. at 10–12) made it indisputable that the focus of the claims was on the abstract idea of exchanging reward points. Even before the *cxLoyalty* decision issued, this appeal was frivolous. *Cf. Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377, 1379 (Fed. Cir. 2017) (affirming as not abuse of discretion district court award of $931,903.45 in "post-*Alice* attorney fees [under Sec. 285], including fees incurred during the appeal," where the asserted patent claims were "manifestly" directed to a "fundamental economic practice," and the Court had affirmed invalidity under *Alice* under Rule 36).

## VII. THE COURT SHOULD AWARD AMERICAN EXPRESS $75,000

American Express will spend more than $75,000 on this appeal, not counting the value of its in-house counsel's time. The accompanying declaration of its lead counsel explains the fees and costs incurred by American Express on this appeal. (*See* Vandenberg Decl.) The requested amount of $75,000 is a reasonable amount under the circumstances. *Cf. Pop Top Corp. v. Rakuten Kobo Inc.*, No. 2021-2174, 2022 WL 2751662, at *3 (Fed. Cir. July 14, 2022) (non-precedential) (awarding fees and double costs of $107,748.27 under Fed. R. App. P. 38 for an appeal that was frivolous as argued and as filed, which included $20,000 for the cost of preparing the sanctions motion).

2021 AIPLA survey data (Vandenberg Decl., Ex. A) suggests that the median cost of an appeal to this Court from a PTAB post-grant review proceeding in the "electrical/computer" practice area approaches approximately $140,000. This estimate is derived by subtracting the highlighted dollar amounts in the first table below (costs through the PTAB hearing) from the corresponding amounts in the second table below (costs through appeal):

**PGR/IPR Through PTAB hearing (000s) by Type of Practice (Q46Aiii)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 34 | 6 | 4 | 4 | 17 | 3 |
| Mean (Average) | $431 | $248 | $250 | $313 | $436 | $1,167 |
| 10th Percentile 10% | $90 | ISD | ISD | ISD | $207 | ISD |
| First Quartile 25% | $250 | $170 | $63 | $188 | $300 | ISD |
| Median (Midpoint) | $310 | $295 | $225 | $300 | $400 | $250 |
| Third Quartile 75% | $475 | $305 | $463 | $450 | $475 | ISD |
| 90th Percentile 90% | $500 | ISD | ISD | ISD | $704 | ISD |

Exhibit A at 012.

**PGR/IPR Through appeal (000s) by Type of Practice (Q46Aiv)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 33 | 6 | 4 | 5 | 17 | 1 |
| Mean (Average) | $582 | $294 | $319 | $990 | $634 | ISD |
| 10th Percentile 10% | $58 | ISD | ISD | ISD | $230 | ISD |
| First Quartile 25% | $275 | $74 | $31 | $150 | $375 | ISD |
| Median (Midpoint) | $450 | $350 | $250 | $400 | $550 | ISD |
| Third Quartile 75% | $750 | $440 | $675 | $2,125 | $750 | ISD |
| 90th Percentile 90% | $750 | ISD | ISD | ISD | $1,056 | ISD |

Exhibit A at 013.

These tables are not a perfect measure of the cost of appeal from an IPR, CBM, or PGR decision of the Board. Other steps can occur between the PTAB hearing and an appeal, such as a motion for reconsideration by the Board. But as such motions are not the norm, and they do not involve an oral hearing, they presumably do not account for a substantial part of the reported $140,000 differential. While this $140,000 amount is an imperfect approximation, it still is probative of the fact that

$75,000 is not an unreasonably high amount of fees and expenses to defend this appeal, especially when including the time required to prepare this motion for fees.

## VIII. **CONCLUSION**

In view of Signature's misconduct on this appeal and the importance of enforcing Rule 38 vigorously, the Court should order Signature to pay American Express $75,000 in damages.

Respectfully submitted,

/s/John D. Vandenberg
John D. Vandenberg
Sarah E. Jelsema
Todd M. Siegel
Robert T. Cruzen
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com
sarah.jelsema@klarquist.com
todd.siegel@klarquist.com
rob.cruzen@klarquist.com

*Counsel for Appellees American Express Company and American Express Travel Related Services Company, Inc.*

December 5, 2022.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

✓ the filing has been prepared using a proportionally-spaced typeface and includes 2,366 words.

___ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

___ the filing contains _____ pages/words/lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

December 5, 2022.                    /s/John D. Vandenberg
                                     John D. Vandenberg

                                     *Counsel for Appellees American Express Company and American Express Travel Related Services Company, Inc.*

*Signature Systems, LLC v. American Express Company*, No. 20-1319

Attachments and Exhibits to Appellees'
Motion for an Award of Attorneys' Fees And Expenses

## TABLE OF CONTENTS

Declaration of John D. Vandenberg in Support of Appellees' Motion for an Award of Attorneys' Fees and Expenses ................................................................. 001

Exhibit A: Excerpts of AIPLA Report of the Economic Survey 2021 ............ 008

20-1319

# United States Court of Appeals
# for the Federal Circuit

SIGNATURE SYSTEMS, LLC,
*Appellant*

v.

AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.,
*Appellees*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual
Property and Director of the United States Patent and Trademark Office,
*Intervenor*

_____

Appeal from the United States Patent and Trademark Office, Patent
Trial and Appeal Board in No. CBM2018-00035

## DECLARATION OF JOHN D. VANDENBERG IN SUPPORT OF APPELLEES' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

John D. Vandenberg
Sarah E. Jelsema
Todd M. Siegel
Robert T. Cruzen
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204-2988
(503) 595-5300
john.vandenberg@klarquist.com

December 5, 2022

*Counsel for Appellees American Express
Company and American Express Travel
Related Services Company, Inc.*

I, John D. Vandenberg, hereby declare as follows:

1. I am an attorney at law duly licensed to practice before this Court and am a partner in the law firm of Klarquist Sparkman, LLP ("Klarquist"), attorneys of record for Appellees American Express Company and American Express Travel Related Services Company, Inc. ("American Express") in the above-entitled action (the "Action"). I make this declaration in support of American Express's Motion for an Award of Attorneys' Fees and Expenses. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as set forth below.

2. American Express seeks an award of $75,000.00 in costs and "just damages" incurred on this appeal. This declaration is submitted as the required "statement, under oath, specifying the following: (A) the nature of each service rendered; (B) the amount of time expended rendering each type of service; and (C) the customary charge for each type of service rendered." Fed. Cir. R. 47.7(b)(2).

3. In addition to its attorney fees, American Express incurred expenses in this appeal including approximately $571.51 in costs to print its Red Brief and deliver it to the Court, and travel expenses of approximately $1,765.49 for me to travel from Oregon to the site of the argument on this appeal.

4. Klarquist has represented American Express during the entire 34-month duration of this appeal. Klarquist attorneys and other billing personnel are required

to record their daily time, together with a description of daily work performed, and enter these amounts and descriptions into a database maintained by Klarquist's accounting department. These procedures were followed in connection with the work performed by Klarquist in this matter for American Express. I relied on relevant data from this database in preparing this declaration.

5.   The following chart identifies the attorneys at Klarquist who worked on this appeal through the date of the oral argument, November 1, 2022, their hourly rates as charged to American Express, the number of hours each attorney billed related to the appeal through November 1, 2022, and the total value of each attorney's appeal-related work.

| Attorney | Years of Attorney Experience | Hourly Rate(s) Charged Over Course of Matter | Hours | $$ |
|---|---|---|---|---|
| John D. Vandenberg | 38 | $570/$606 | 80.3 | $48,658 |
| Todd M. Siegel | 26 | $475/$515 | 19.8 | $9,589 |
| Rob T. Cruzen | 23 | $475/$515 | 11.2 | $5,644 |
| Sarah E. Jelsema | 11 | $325 | 47.9 | 15,567.50 |
| **TOTAL** | | | **159.2** | **$79,458.50** |

6.   The above billings do not include the time we have spent working on this Rule 38 motion for American Express.

2

7.   The above attorney hours were devoted to standard tasks performed for any appellee including review of the appellant's briefs and cited cases and the record, drafting appellee's brief, communications with appellant regarding the Appendix, and preparing for the oral argument. I am not specifically aware of what is customary for other law firms to charge for each of these tasks before this Court but have worked on appeals at Klarquist for more than thirty years and can represent that our billings in this case for such tasks were comparable to or less than our billings in other appeals, generally, accounting for inflation.

8.   Mr. Siegel argued this case before the Board and was the lead attorney for American Express for the first two years of this appeal. Mr. Cruzen also was substantively involved in the case before the Board and on this appeal during this same period. This two-year period included motion practice in response to *Arthrex*. Their billings noted above primarily were incurred in the first two years of this appeal, before the briefing stage. Both also assisted with our Red Brief and preparing for oral argument.

9.   Mr. Vandenberg and Ms. Jelsema have substantial experience with appeals before the Court and were primarily responsible for the briefing and preparation for oral argument on this appeal. Ms. Jelsema also engaged with Signature Systems in preparation of the Appendix and Mr. Vandenberg argued the

3

case. Their above-noted billings were primarily incurred in 2022 during the briefing stage.

10.    Available 2021 AIPLA survey data (Exhibit A) suggests that the median cost of an appeal to this Court from a PTAB PGR or IPR proceeding in the "electrical/computer" practice area approaches approximately $140,000. This estimate is derived by subtracting the highlighted dollar amounts in the first table below (costs through the PTAB hearing) from the corresponding amounts in the second table below (costs through appeal):

**PGR/IPR Through PTAB hearing (000s) by Type of Practice (Q46Aiii)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 34 | 6 | 4 | 4 | 17 | 3 |
| Mean (Average) | $431 | $248 | $250 | $313 | $436 | $1,167 |
| 10th Percentile 10% | $90 | ISD | ISD | ISD | $207 | ISD |
| First Quartile 25% | $250 | $170 | $63 | $188 | $300 | ISD |
| Median (Midpoint) | $310 | $295 | $225 | $300 | $400 | $250 |
| Third Quartile 75% | $475 | $305 | $463 | $450 | $475 | ISD |
| 90th Percentile 90% | $500 | ISD | ISD | ISD | $704 | ISD |

Exhibit A at 012.

**PGR/IPR Through appeal (000s) by Type of Practice (Q46Aiv)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 33 | 6 | 4 | 5 | 17 | 1 |
| Mean (Average) | $582 | $294 | $319 | $990 | $634 | ISD |
| 10th Percentile 10% | $58 | ISD | ISD | ISD | $230 | ISD |
| First Quartile 25% | $275 | $74 | $31 | $150 | $375 | ISD |
| Median (Midpoint) | $450 | $350 | $250 | $400 | $550 | ISD |
| Third Quartile 75% | $750 | $440 | $675 | $2,125 | $750 | ISD |
| 90th Percentile 90% | $750 | ISD | ISD | ISD | $1,056 | ISD |

Exhibit A at 013.

I declare under penalty of perjury that the foregoing is true and correct.

/s/John D. Vandenberg
John D. Vandenberg

December 5, 2022.

# EXHIBIT A



# AIPLA
# 2021
## Report of the Economic Survey

Prepared Under Direction of the
American Intellectual Property Law Association
Law Practice Management Committee

**American Intellectual
Property Law Association**
1400 Crystal Drive, Suite 600
Arlington, VA 22202

www.aipla.org

AIPLA Report of the Economic Survey 2021

## INTRODUCTION

The AIPLA Economic Survey, developed and directed by the Law Practice Management Committee of the American Intellectual Property Law Association (AIPLA), reports the annual incomes and related professional and demographic characteristics of intellectual property (IP) law attorneys and associated patent agents. Conducted every other year by AIPLA, this survey also examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services. All U.S. AIPLA members, with the exception of student members were invited to participate.

The Law Practice Management Committee took an active role in reviewing the Economic Survey with a goal of improving the usefulness and value of the data that are collected and analyzed.

## DATA COLLECTION

An e-mail invitation to participate in the 2021 AIPLA Economic Survey was sent to 7,220 AIPLA members; accounting for bounces and requests to be removed from the database, the actual sample surveyed was 6,833. The e-mail included an individualized direct link to the Web-based questionnaire along with an attached letter requesting additional participation in the Firm portion of the Economic Survey. The initial e-mail was followed up by several e-mail reminders. Additionally, AIPLA sent out promotional emails with survey links as well. Similar to past years, additional efforts were made to collect the Firm Survey data. Contact information was collected directly from the Individual Survey respondents that was then used for distributing Firm Survey links directly to the appropriate people identified at each firm by the Individual Survey respondents.

A total of 740 individuals responded by completing some or all of the Individual questionnaire, yielding a 10.8% response rate, nearly the same rate as in 2019. Additional efforts to gather data for the Firm portion of the survey garnered 165 responses – slightly higher than the 160 received in 2019.

All data submitted by respondents were reviewed and evaluated for reasonableness and consistency; data anomalies and outliers were analyzed and corrected or deleted.

In many cases, respondents did not answer every question, so the total counts for each table may vary.

## CHANGES TO THE SURVEY

A number of enhancements were made to the **Individual Survey** instrument this year, including the addition of a few questions regarding the COVID-19 pandemic.

In Part I, questions about COVID-19 were added, expanding the questions about remote working. Additionally, respondents were given the option of *Prefer not to respond* for the gender and ethnicity questions. Lastly, two questions regarding familiarity with the Global Dossier were removed this year.

Part III (Private Practitioners) added two new questions about COVID-19 and billing rate changes and removed questions added in 2019 that requested data that is already collected on the Firm Survey.

The category of *Filing US Applications Abroad* that was added in 2019 in Part IV was revised so that respondents no longer were asked to indicate the top 3 countries for US applications entering foreign national phase or for US applications directly filed with foreign office. They were still asked, however, to choose <u>one</u> foreign country and answer all questions in that section based on that <u>one</u> foreign country. Another question was added in this section for respondents to indicate if there is a surcharge to clients for handling invoices from foreign counsel.

1

The reference to Covered Business Method (CBM) Review was removed when respondents were asked to estimate the total cost of filing or defending a petition for a post-grant proceeding. It was replaced with the category of PGR/IPR – Life Sciences. The other two categories (PGR/IPR – Electrical/Computer and PGR/IPR – Mechanical) remained the same.

Litigation – Trademark Opposition/Cancellation was updated from two categories (End of Discovery and Inclusive, all costs) to three categories (Through filing petition, Through end of discovery, and Inclusive, all costs).

The **2021 Firm Survey** instrument added new questions related to the COVID-19 pandemic. More specifically, there were questions about closing or reducing office space and remote working before, during, and after the pandemic. COVID-19 related questions associated with the summer associates' programs were also added. A new question about outsourcing services was included to replace two previous questions about outsourcing international filing and annuity payments. A new question requesting the percent change in the firm's revenue for IP legal services from 2019 to 2020 was also added. At the same time a number of questions were removed this year, including numerous detailed questions regarding support staff (billable and non-billable). Docketing and accounting system questions were removed as well as the section collecting the same charges data that is collected on the Individual Survey.

## DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS

A minimum of three responses is required to show composite values. **The term "ISD" is used to show insufficient data.** Similar to the past few reports, table rows with one or two respondents have been omitted to protect the anonymity of respondents, and tables with no valid rows have likewise been omitted. In general, tables with less than 20 respondents overall were not shown in order to maintain statistical reliability of the data; however, exceptions were made, and some tables were included despite having fewer than 20 respondents overall. Location tables that display data for typical charges and litigation related matters were deleted when there were less than 20 respondents. The corresponding charges and litigation tables with data displayed by number of attorneys were kept. Additionally, for applicable tables, the 10th and 90th percentiles could only be shown if there were 10 or more respondents.

**Quartiles:** Quartiles are used to show distributions of real numbers. Responses are described by three quartiles: the first quartile, the median, and the third quartile. Quartiles identify interpolated locations on a distribution of values and do not necessarily represent actual reported values. Another label for quartiles is percentiles; the first quartile is the same as the 25th percentile, the median is the 50th percentile, and the third quartile is the 75th percentile. For example, when all reported values are listed from highest to lowest, the third quartile identifies the point on the list that is equal to or greater than 75 percent (three-quarters) of the reported values and the first quartile identifies the point on the list that is equal to or less than 25 percent (one-quarter).

**10th Percentile:** Also used to show distributions of real numbers, ninety percent of respondents reported this amount or more.

**90th Percentile:** Ten percent reported this amount or more. If there are fewer than 10 values, the 90th percentile cannot be calculated.

**Median (midpoint):** The median identifies the point in the distribution of reported values that is equal to or larger than one-half of reported values and equal to or smaller than one-half—that is, the mid-point. A median is shown when three or more values were reported by respondents. The first and third quartiles are shown when four or more values were reported by respondents. Quartiles and medians based on values reported by survey respondents are estimates of the quartiles and medians that could be determined if the

AIPLA Report of the Economic Survey 2021

characteristics of the entire population represented by survey respondents were known. In general, the more values that are reported, the more accurately quartiles estimate the distribution of values among all AIPLA members.

**Mean (average):** The mean is shown when three or more values were reported by respondents. It is equal to the sum of all values divided by the number of values.

It should be noted that if the mean exceeds the median, it is because high values affect the calculations. It is also possible, especially with a small number of values, for the mean to exceed the third quartile.

Percentages in some tables and graphs may not sum exactly due to rounding.

Other definitions useful in understanding tabular information presented in this report are:

**Income:** Defined as *"total gross income in calendar year 2020 from your primary practice…including any partnership income, cash bonus, share of profits, and similar income you received, and any deferred compensation in which you vested in 2020."*

**Typical Charges:** Respondents were instructed to respond *"only if you have been personally responsible for a representative sample of the type of work to which the question pertains, either as a service provider (i.e., an attorney in private practice) or as a purchaser of such services (i.e., corporate counsel)."* When reporting, respondents were directed to assume *"a typical case with no unusual complications,"* and were asked *"what did you charge (or would have charged, e.g., based on a fixed fee rate schedule) or what were you charged (or would have expected to be charged, e.g., based on a fixed fee rate schedule), in 2020, for legal services only (including search fees, but not including copy costs, drawing fees or government fees) in each of the following types of US matters?"* Respondents were also asked to indicate the type of fee primarily used in 2020 (i.e., fixed fee, hourly, other).

**Estimated Litigation Costs:** Respondents were instructed to respond to these questions *"only if you have personal knowledge either as a service provider (attorney in private practice) or as a purchaser of such services (corporate counsel) of the costs incurred within the relatively recent past, for the type of work to which the question pertains. In each of the questions, 'total cost' is all costs, including outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses."* Respondents were further instructed to estimate these based on a single IP asset, such as one patent at issue or one trademark, etc.

**Location:** The metropolitan areas of Boston, New York City, Philadelphia, Washington (DC-MD-VA), Chicago, and Minneapolis–St. Paul include all localities—central city and surrounding areas—within the primary metropolitan statistical area. Texas is the one state reported separately. There were sufficient responses to breakout Los Angeles and San Francisco separately; California firms outside of those metro areas were included in "Other West." Other categories exclude those named metropolitan areas.

**Total Costs: Post-Grant Proceedings: by Technology - Electrical/Computer by Type of Practice**

## PGR/IPR Through filing petition (000s) by Type of Practice (Q46Ai)

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 34 | 7 | 4 | 4 | 17 | 2 |
| Mean (Average) | $136 | $109 | $144 | $94 | $163 | ISD |
| 10th Percentile 10% | $58 | ISD | ISD | ISD | $100 | ISD |
| First Quartile 25% | $100 | $75 | $75 | $56 | $100 | ISD |
| Median (Midpoint) | $120 | $100 | $150 | $88 | $150 | ISD |
| Third Quartile 75% | $163 | $150 | $206 | $138 | $200 | ISD |
| 90th Percentile 90% | $213 | ISD | ISD | ISD | $290 | ISD |

## PGR/IPR Through end of motion practice (000s) by Type of Practice (Q46Aii)

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 31 | 5 | 4 | 4 | 17 | 1 |
| Mean (Average) | $274 | $182 | $200 | $213 | $341 | ISD |
| 10th Percentile 10% | $100 | ISD | ISD | ISD | $175 | ISD |
| First Quartile 25% | $190 | $125 | $106 | $125 | $200 | ISD |
| Median (Midpoint) | $250 | $190 | $200 | $225 | $300 | ISD |
| Third Quartile 75% | $300 | $235 | $294 | $288 | $375 | ISD |
| 90th Percentile 90% | $375 | ISD | ISD | ISD | $580 | ISD |

## PGR/IPR Through PTAB hearing (000s) by Type of Practice (Q46Aiii)

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 34 | 6 | 4 | 4 | 17 | 3 |
| Mean (Average) | $431 | $248 | $250 | $313 | $436 | $1,167 |
| 10th Percentile 10% | $90 | ISD | ISD | ISD | $207 | ISD |
| First Quartile 25% | $250 | $170 | $63 | $188 | $300 | ISD |
| Median (Midpoint) | $310 | $295 | $225 | $300 | $400 | $250 |
| Third Quartile 75% | $475 | $305 | $463 | $450 | $475 | ISD |
| 90th Percentile 90% | $500 | ISD | ISD | ISD | $704 | ISD |

# Total Costs: Post-Grant Proceedings: by Technology - Electrical/Computer by Type of Practice

## PGR/IPR Through appeal (000s) by Type of Practice (Q46Aiv)

| | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 33 | 6 | 4 | 5 | 17 | 1 |
| Mean (Average) | $582 | $294 | $319 | $990 | $634 | ISD |
| 10th Percentile 10% | $58 | ISD | ISD | ISD | $230 | ISD |
| First Quartile 25% | $275 | $74 | $31 | $150 | $375 | ISD |
| Median (Midpoint) | $450 | $350 | $250 | $400 | $550 | ISD |
| Third Quartile 75% | $750 | $440 | $675 | $2,125 | $750 | ISD |
| 90th Percentile 90% | $750 | ISD | ISD | ISD | $1,056 | ISD |